PJR/tab             Attorney No. 141             Our File No. 5574-24545

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SANDRA L. VALENTINO and WILLIAM P. BRAMANTI, | ) ) ) |
| Plaintiffs, | ) Judge Hibbler ) |
| v. | ) No. 04 C 2373 ) |
| VILLAGE OF SOUTH CHICAGO HEIGHTS, PAUL PETERSON and MAYOR DAVID OWEN, in their Official and Individual Capacity, | ) ) ) ) ) |
| Defendants. | ) ) |

**THE VILLAGE OF SOUTH CHICAGO HEIGHTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT DIRECTED TO WILLIAM P. BRAMANTI'S CLAIM (COUNT III)**

**I.    INTRODUCTION.**

Under Count III of his complaint, William P. Bramanti attempts to state a claim for relief under 42 U.S.C. Section 1983. Bramanti claims that the Village of South Chicago Heights retaliated against him by "defaming and slandering his good name, reputation, integrity" and further claims that "the acts of Defendants as enumerated herein had the likely effect of chilling Plaintiff's exercise of constitutionally protected speech" (See paragraphs 65, 67, and 68 of Bramanti's complaint). With respect to the Village of South Chicago Heights, he claims that "Defendants' actions reflect a policy, custom, or pattern of official conduct of penalizing individual employees for exercising their right to free speech under the First and Fourteenth Amendments". (See paragraph 69 of Plaintiff's complaint attached hereto as Exhibit A).

The Village has filed an answer to the complaint in which it denies the material allegations contained in Bramanti's complaint, including paragraphs 65, 67 and 69 (A copy of the Village's answer and affirmative defenses is attached hereto as Exhibit B). The Village is entitled to summary judgment

1

inasmuch as Mr. Bramanti is unable to submit evidence which shows that there was a policy, custom or practice of official conduct of "penalizing individual employees for exercising their right to free speech under the First and Fourteenth Amendments". The Village is also entitled to summary judgment inasmuch as Mr. Bramanti is incapable of establishing a prima facie case of First Amendment retaliation.

## II.     FACTS

William P. Bramanti was employed as a part-time inspector by the Village of South Chicago Heights (See paragraph 1 of Defendant's 56.1(a) statement). He resigned his position in September of 2001 (See paragraph 2 of Bramanti's deposition testimony). As a building inspector, his duties included "making inspections when necessary" (See paragraph 3 of Defendant's 5.1(a) statement). He was not forced out of his position with the Village of South Chicago Heights and when he left the Village he had no information or evidence which indicated that Village employees were engaging in "ghost payrolling" (See paragraphs 7 and 8 of Defendant's 56.1(a) statement). During the year 2002, Bramanti never approached David Owen to advise him that employees were being paid for hours they did not work (See paragraph 10 of Defendant's 56.1(a) statement). Bramanti supported Mayor Owen when he ran for re-election in 2001 (See paragraph 11 of Defendant's 56.1(a) statement).

Bramanti concedes that keeping family members on the payroll does not violate state or federal law (See paragraph 13 of Defendant's 56.1(a) statement). He had a political falling out with Mayor Owen when he resigned in September of 2001 (See page 16 of Bramanti's deposition testimony). He admits that during the municipal election campaign held in early 2003, he did not possess any records or materials which indicated that the mayor's children were being paid for hours they did not work (See paragraph 18 of Bramanti's 56.1(a) statement). In early 2003, Bramanti formed an organization called Citizens Against Corruption (See paragraph 20 of Defendant's 56.1(a) statement). As interim chairman of Citizens Against Corruption, Bramanti was "the official letter writer" (See paragraph 41 of Defendant's 56.1(a) statement). During the 2003 municipal election campaign, Bramanti sent out letters to the residents of South Chicago Heights, which he raised the issue of ghost payrolling (See paragraphs

42 and 43 of Defendant's 56.1(a) statement). In each of the letters Bramanti sent out, he raised the issue of ghost payrolling in a "public and open manner" (See paragraph 43 of Defendant's 56.1(a) statement). Sandra Valentino had no involvement in preparing the letters authored by Mr. Bramanti (See paragraph 44 of Defendant's 56.1(a) statement). Ms. Valentino had no involvement in preparing the FOIA requests that the Village submitted to the Village of South Chicago Heights (See paragraph 37 of Defendant's 56.1(a) statement). Although Bramanti's letters stated that Citizens Against Corruption hired a "investigator" concerning alleged wrongdoing at the Village of South Chicago Heights, Bramanti admits that no investigator was ever hired and thus, no "final report" was ever received (See paragraph 45 of Defendant's 56.1(a) statement).

     Mr. Bramanti admits that by sending out his February 2003 letter he injected himself into a very public controversy (See paragraph 47 of Defendant's 56.1(a) statement). He further admits that he did not wish to remain anonymous and the fact that the first letter was not signed was a simple oversight on his part (See paragraph 47 of Defendant's 56.1(a) statement). As of March 28, 2003, there was a major controversy concerning the politics and the way business was being done in the Village of South Chicago Heights (See paragraph 59 of Defendant's 56.1(a) statement). Bramanti became directly involved in that controversy (See paragraph 60 of Defendant's 56.1(a) statement). Bramanti concedes he has no evidence which indicates that Eric Faoro, Yvette Owen, and April Faoro which indicates or suggests that these individuals were paid for hours they did not work (See paragraphs 22, 24, 26, 28, 62, 63, 64, 65, 67 and 68 of Defendant's 56.1(a) statement).

     Bramanti admits that he called Eric Faoro a thief even though he has no evidence which indicates that Mr. Faoro was paid for work he did not perform (See paragraph 63 of Defendant's 56.1(a) statement). Mr. Bramanti has also labeled Yvette a thief even though he has no evidence which indicates that Yvette Owen was paid for hours that she did not work (See paragraph 64 of Defendant's 56.1(a) statement).

Bramanti admits that the letters David Owen wrote in response to those he authored on behalf of "Citizens Against Corruption" did not deter him from exercising his First Amendment rights (See paragraph 57 of Defendant's 56.1(a) statement).

Mr. Bramanti owns property at 175 East 34th Street. Sandra Valentino, who was the water billing clerk, never set up a water account for Bramanti's property at 175 East 34th Street (See paragraph 69 of Defendant's 56.1(a) statement). Bramanti concedes that he did not pay for the water meter that was installed on his property (See paragraph 33 of Defendant's 56.1(a) statement). Robert Carl sent him a letter concerning his failure to pay for water service as well as his failure to pay for certain water connection fees (See paragraph 32 of Defendant's 56.1(a) statement). Bramanti has no evidence or information which indicates that either David Owen or Paul Peterson directed Robert Carl to send him that letter (See paragraphs 31 and 32 of Defendant's 56.1(a) statement). Bramanti was charged $450 for a sewer tap fee but never paid that fee (See paragraphs 32-35 of Defendant's 56.1(a) statement). He concedes that it is possible that the Village did not receive payment for the sewer tap and water tap fees (See paragraph 35 of Defednant's 56.1(a) statement). He assumes that M&J Underground (a contractor) paid the sewer tap fee (See paragraph 34 of Defendant's 56.1(a) statement). The Village has not denied Bramanti any municipal services (See paragraph 36 of Defendant's 56.1(a) statement). The issue of corruption in the water department was not raised in any of the letters Bramanti sent under the auspices of "Citizens Against Corruption" (See paragraph 82 of Defendant's 56.1(a) statement). Sandra Valentino had no involvement in preparing the letters Mr. Bramanti authored on behalf of "Citizens Against Corruption" (See paragraph 43 of Defendant's 56.1(a) statement).

Bramanti admits that he has no information that Village funds or resources were used to prepare David Owen's March 28, 2003 letter (See paragraphs 50, 51, 52 and 54 of Defendant's 56.1(a) statement. He does not know whether Paul Peterson had any involvement in creating the March 28, 2003 letter (See paragraph 56 of Defendant's 56.1(a) statement).

Bramanti conducted 11 inspections during the year 2001 (See paragraph 83 of Defendant's 56.1(a) statement).

When David Owen received the February 28, 2003 letter, he did not know whether William Bramanti authored it (See paragraph 84 of Defendant's 56.1(a) statement).

Typically, the Village of South Chicago Heights will issue anywhere from 200 to 300 building permits per year (See paragraph 85 of Defendant's 56.1(a) statement). The Village Board never took a vote on whether the Village should respond to the charges made by Bramanti and Citizens Against Corruption (See paragraph 86 of Defendant's 56.1(a) statement).

### III. SINCE BRAMANTI IS UNABLE TO SHOW THAT ANY ALLEGED UNCONSTITUTIONAL ACT COMMITTED BY A FINAL POLICYMAKER OR PURSUANT TO AN EXPRESS POLICY, CUSTOM, OR LONGSTANDING PRACTICE, THE VILLAGE OF SOUTH CHICAGO HEIGHTS IS ENTITLED TO JUDGMENT AS TO COUNT III.

### 1. Plaintiff is incapable of showing that that the alleged violation was committed by a "official policymaker".

Municipalities are "persons" subject to suit under 42 U.S.C. Section 1983 but can be held liable only if the unconstitutional act was committed by a government actor pursuant to a custom or policy, express enactment, or if the act was committed by a final policymaker for the governmental entity. Gable v. City of Chicago, 296 F.3d 531, 537 (7th Cir.2002). A municipality or county cannot be held liable solely on the basis of respondeat superior. McGreal v. Ostrov, 368 F.3d 657, 684 (7th Cir.2004).

Barth is unable to show that the alleged constitutional violation was perpetrated by an individual or entity with "final policymaking authority". In order to have "final policymaking authority", the official must possess the responsibility for making law, setting policy – that is the authority to adopt rules for the government. Auriemma v. Rice, 957 F.2d 397, 401 (7th Cir.1992). The authority to make a municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, Id. Whether an official had final policymaking authority is a question of state law. Pembauer v. City of Cinncinnatti, 475 U.S. 469, 483-84, 106 S.Ct. 1292 (1986). As a general rule, a person holding only executive power does not have final policymaking authority for the person of Section

1983. Rasche v. Village of Beecher, 336 F.3d 588 (7th Crc.2003). The policymaking authority in a city or village structure will be either the city council or the board of trustees, respectively. Auriemma v. Rice, 957 F.2d 399-400 (7th Cir.1992). Bramanti's complaint fails to identify any individual or individuals who possess "final policymaking authority". Moreover, there is absolutely no evidence which indicates that "final policymaking authority" was delegated to either David Owen or Paul Peterson. Bramanti is similarly incapable of producing evidence which shows that the Board of Trustees authored the letters which stated that "he [Bramanti] wanted him to ghost payroll me". Bramanti is likewise incapable of producing any evidence which shows that the Village Board of Trustees adopted any policies or ordinances which caused the alleged constitutional violation. He is also incapable of producing any evidence which shows that the Board of Trustees condoned or encouraged retaliation against employees or citizens. As a matter of fact, the evidence demonstrates otherwise. The Village Board did not take a vote or otherwise direct David Owen to send out the newsletter with the language to the effect that Bramanti wanted David Owen to "ghost payroll him" (See paragraph 86 of Defendant's 56.1(a) statement). Further, there is no evidence which indicates that Village resources and manpower to used to create that letter. Rather, the evidence shows that the letter was sent out by the Citizens for Progress Party.

It is insufficient for a plaintiff to simply argue that a person has and exercises authority, even if it is final. What Bramanti cannot do is show that David Owen is a person who has final authority to set policy for the Village. Kujawski v. Board of Commissioners of Bartholomew County, 183 F.3d 734, 739 (7th Cir.1999). Since Bramanti is unable to produce any evidence which suggests the Board of Trustees prepared, authorized, distributed or otherwise published the newsletter in question, Bramanti's claim against the Village must necessarily fail. Finally, there is no evidence which indicates that the content of the newsletter was ratified or adopted by the Board of Trustees.

**3. Bramanti is unable to establish that there exists a custom or usage of retaliating against individual who engage in First Amendment Activity.**

The Supreme Court has made it clear that a "de facto custom or usage exists only when it is possible that future behavior will conform to the state's informal custom by virtue of its past acquiescence to unconstitutional conduct. <u>Adickes v. S.H.Kress & Company</u>, 398 U.S. 144, 90 S. Ct. 1598 (1970). A custom or usage for purposes of Section 1983 requires state involvement and is not simply a practice that reflects longstanding social habits, generally observed by a people in a locality. <u>Id</u>. at 166. A custom or usage at a municipality for purposes of Section 1983 must have the force of law by virtue of the persistent practices of state officials. <u>Adickes</u>, 398 U.S. at 167. In order to impose Section 1983 liability for injuries allegedly caused by a widespread practice or custom, the plaintiff must show that there was some knowledge or awareness, actual or implied, of the custom and its consequences showing the municipality's approval, acquiescence or encouragement of the alleged violation. <u>Jones v. City of Chicago</u>, 787 N.E.2d 200, 204 (7th Cir.1996). Bramanti claims that the Village has a "policy" of retaliating against individual employees who engage in First Amendment activities. While Bramanti listed a number of individuals whom he claims were subjected to retaliation, he is incapable of producing any evidence which shows that the Village has in fact engaged in such retaliation. He claims that David Owen forced one Lil Tamborina out of her position at the "Nifty over Fifty" Senior Club (See page 149 of Bramanti's deposition testimony) but he does not have first-hand knowledge as to whether in fact Ms. Tamborini was forced out of her position at the "Nifty over Fifty" club. He also mentions an individual named George Bova. However, George Bova has testified that he does not believe the Village has victimized him or retaliated against him for engaging in First Amendment activity (See paragraphs 70 and 80 of Defendant's 56.1(a) statement). Bramanti has also mentioned one Pam Palanca as someone who has been subjected to this "custom and usage". However, according to Ms. Palanca and her attorney, Dana Kurtz, she was terminated because of her disability, not because she spoke out on any matter of public concern. Inasmuch as Bramanti is incapable of producing any evidence which shows the Village's approval, acquiescence or encouragement of the alleged unconstitutional activity, Bramanti's First Amendment claim must be dismissed.

**4.     In order to prevail against the Village, Bramanti must prove that a municipal policy or custom caused his injury**.

Abbott v. Village of Winthrop Harbor, 05 F.3d 976, 981 (7th Cir.2000).  Bramanti has admitted that the document which he claims defamed him was "campaign literature" (See paragraph 51 of Defendant's 56.1(a) statement).  He further admits that he has no information which indicates that Village funds, resources or manpower were used to prepare the letter in question (See paragraph 49, 50, 51, 53, and 54 of Defendant's 56.1(a) statement).  Additionally, Bramanti has admitted that there is no evidence which indicates that the Board approved, adopted or ratified the letters that he considers to be "defamatory" (See paragraph 86 of Defendant's 56.1(a) statement).  Since Bramanti cannot establish a connection between the Village and the alleged constitutional violation, the Village is entitled to judgment as a matter of law.

**IV.     INASMUCH AS BRAMANTI IS UNABLE TO SHOW THAT DEFENDNAT OWEN ACTED UNDER "COLOR OF LAW", THE VILLAGE IF ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

To succeed in a Section 1983 claim, a plaintiff must show that (1) a person acting under color of law deprived the plaintiff of a federal right.  Bublitz v. Cottey, 327 F.3d 485, 488 (7th Cir.2003).  If a public official or employee performs a private act, even while on duty, it is not an act under color of law.  Blair v. city of Pomona, 223 F.3d 1074, 1080 (9th Cir.2002).  In determining whether an official's actions are undertaken under color of law, the dispositive issue is whether the defendant acted pursuant to power he or she possessed by state authority.  A purely private act is not considered to be done under color of state law merely because the actor is a public official.  Smith v. Winter, 782 F.2d 508, 512 (5th Dist.1986); Monroe v. Pape, 365 U.S.167, 184, 81 S.Ct.  If a person does not act under "color of state law", the action against him must be dismissed.  Rendell-Baker v. Kohn, 457 U.S. 830, 838, 102 S.Ct. 2764 (1982). Bramanti claims that David Owen retaliated against him by publishing a newsletter which included the statement "he [Bramanti] wanted me to ghost payroll him".  Bramanti has admitted under oath that the newsletter and statements were not reasonably related to his duties as the mayor of South Chicago Heights (See paragraph 60 of Defendant's 56.1(a) statement).  Bramanti has produced no evidence which

8

indicates that Village resources were used to produce the newsletter (See paragraphs 50 and 54 of Defendant's 56.1(a) statement). Likewise, Bramanti admits he has no evidence or information which indicates that the Village Board approved or ratified the newsletter (See paragraphs 51, 53 and 86 of Defendant's 56.1(a) statement). Bramanti is unable to show that the conduct he ascribes to Mayor Owen was committed pursuant to a misuse of power possessed by virtue of state law (See Yeksigian v. Nappi, 900 F.2d 101 7th Cir.1990). Similarly, he is unable to show that the newsletter in question was published and distributed only because Mayor Owen was clothed with the authority invested in him by the State of Illinois. Since Bramanti is unable to show that David Owen's acts were taken under color of state law, he cannot maintain a Section 1983 claim against the Village. As for Peterson, Bramanti can produce no evidence which indicates that he had an involvement whatsoever in creation or distribution of the newsletters (See paragraph 56 of Defendant's 56.1(a) statement).

## V. THE VILLAGE IS ENTITLED TO SUMMARY JUDGMENT INASMUCH AS BRAMANTI'S "SPEECH" WAS RECKLESSLY AND DEMONSTRATIVELY FALSE.

Pickering v. Board of Education of High School District 205, 391 U.S. 563, 88 S.Ct. 1731 (1968); McGreal v. Ostov, 368 F.3d 657 (7th Cir.2004). Mr. Bramanti, as chief letter writer for "Citizens Against Corruption", published a letter to the residents of South Chicago Heights that is riddled with statements that can only be described as recklessly false. Mr. Bramanti claimed that the Village was in "dire financial straits". At his deposition he was asked to identify the evidence which shows that the Village was in fact in "dire financial straits". In response, Mr. Bramanti stated that his tax bill had increased astronomically. Moreover, Bramanti admitted that he did not know whether the increase in his property taxes was attributable David Owen and the Village. However, Bramanti acknowledges that David Owen's management of the city's finances was not solely responsible for the increase in his taxes (See paragraphs 14-16 of Defendant's 56.1(a) statement). In his letter, Bramanti falsely claimed that an independent detective agency had been hired to investigate the Village's finances (See paragraphs 19 and 45 of Defendant's 56.1(a) statement). Likewise, no report was ever issued which showed widespread corruption in the Village of South Chicago Heights (See paragraphs 19 and 45 of Defendant's 56.1(a)

statement). After being pressed, Bramanti finally admitted that his statement to the effect that "when the final report was received, it was obvious that there was something that was not right" was misleading (See paragraphs 19, 45 and 46 of Defendant's 56.1(a) statement). In his letter, Mr. Bramanti also accused Mayor Owen and his family of engaging in "ghost payrolling". However, Bramanti admits that at the time he published the letter attacking Mayor Owen, he had no information which indicated that Yvette Owen, Scott Owen and Eric Faoro were paid for hours they did not work (See paragraphs 22, 24, 27, 61, 62, 63, 64, 65, 66 and 67 of Defendant's 56.1(a) statement). Bramanti admits that he was essentially calling Mayor Owen's children "thieves" without having any proof or evidence to support that charge. Id. He subsequently admitted that he never had any evidence or information to support those claims. Instead, he hoped to garner that information, after the fact, by submitting FOIA requests to the Village (See paragraph 67 of Defendant's 56.1(a) statement). It would be colossal understatement to suggest that Mr. Bramanti acted recklessly. Having smeared David Owen and his family, he now claims that he was the victim of retaliation. Inasmuch as the First Amendment does not protect an individual who has made statements that are recklessly false, his First Amendment claim must necessarily be dismissed. Bramanti has also admitted that his statement that a report had been issued which would show widespread corruption was misleading (See paragraph 46 of Defendant's 56.1(a) statement).

## VI.     BRAMANTI FAILS TO STATE A FIRST AMENDMENT CLAIM AGAINST THE VILLAGE.

Under Section 1983, a plaintiff, in addition to showing that the defendant is a state actor, must allege a violation of rights secured by the constitution and law of the United States. West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250 (1998); Gomez v. Toledo, 446 U.S. 635, 10 S.Ct.1920 (1980). However, defamation does not state a claim upon which relief may be granted under Section 1983. Paul v. Davis, 424 U.S. 693 (1976); Bone v. Lafayette, 919 F.2d 64 (7th Cir.1990). Damage to reputation is not actionable under Section 1983. In Paul v. Davis, the Supreme Court held that injury to one's reputation – the interest protected by the Tort of Defamation – does not constitute a protected liberty or property written under the constitution and thus defamation is not actionable under Section 1983. Paul, 424 U.S. at

10

712. Because Bramanti has no constitutional right to be free from defamation, his Section 1983 "retaliation" claim must fail.

### VII. CONCLUSION.

For the reasons stated above, Defendant requests that this court dismiss Bramanti's claim with prejudice.

Respectfully submitted,

/s/ Patrick J. Ruberry_____
PATRICK J. RUBERRY,
Attorney for Defendants

Dowd and Dowd, Ltd.
617 West Fulton Street
Chicago, IL  60661
Tx:  312/704-4400
Fx:  312/704-4500

**CERTIFICATE OF SERVICE**

I, an attorney, state that Defendant Village of South Chicago Heights' Memorandum in Support of its Motion for Summary Judgment directed to William P. Bramanti's claim (Counts III) was served electronically to all law firms of record via ECF on November 18, 2005.

By: /s/ Patrick J. Ruberry _____
Attorney for Defendants

Patrick J. Ruberry
Dowd & Dowd, Ltd.
617 W. Fulton Street
Chicago, IL  60661
Tx:  312/704-4400
Fx:  312/704-4500