PJR/tab                                                          Our File No. 5574-24545

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SANDRA L. VALENTINO and<br>WILLIAM P. BRAMANTI,<br><br>      Plaintiffs,<br><br>   v.<br><br>VILLAGE OF SOUTH CHICAGO HEIGHTS,<br>PAUL PETERSON and MAYOR DAVID<br>OWEN, in their Official and Individual<br>Capacity,<br><br>      Defendants. | )<br>)<br>)<br>) Judge Hibbler<br>)<br>) No. 04 C 2373<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**VILLAGE OF SOUTH CHICAGO HEIGHTS' MOTION TO STRIKE PLAINTIFF
BRAMANTI'S RESPONSE TO DEFENDANT'S 56.1(a) STATEMENT**

NOW COMES the defendant, VILLAGE OF SOUTH CHICAGO HEIGHTS, by and through its attorneys, Dowd & Dowd, Ltd., and pursuant to F.R.C.P. 56.1(a) and 56.1(b), moves to strike William Bramanti's response to its 56.1(a) statement. In support thereof, Defendant states as follows:

1. The Village of South Chicago Heights filed a 87-paragraph Rule 56.1(a) statement in support of its motion for summary judgment directed against William P. Bramanti's claims. On February 28, 2006, Mr. Bramanti filed a response which violates Local Rule 56.1.

2. The 7th Circuit has consistently and repeatedly upheld the District Court's discretion to require strict compliance with L.R. 56.1. Bordelon v. School Reform Board of Trustees, 233 F.3d 524, 527 (7th Cir.2000). Applicable precedent acknowledges that it is a "reasonable judgment" that "consistent, 'bright line' enforcement is essential" –

      not only in promoting compliance with the local rule but also to "ensure that the long-run aggregate benefits in efficiency" that L.R. 56.1 is intended to produce are realized for the system of justice in the Northern District of Illinois. Kozola v. Board of Education of the City of Chicago, 385 F.3d 1104, 1109 (7th Cir.2004).

3. Local Rule 56.1(b)(3)(A) requires the non-movant to file a concise response to each numbered paragraph in the moving party's statement including, in the case of any disagreement, specific references to the affidavits, parts of the record and other supporting materials relied upon" (See L.R. 56.1(b)(3)(A)). The court is not obligated to search the record for factual disputes. Waldridge v. A.N. Hoechts Corp., 24 F.3d 918, 922 (7th Cir.1994). A non-movant's response to the movant's 56.1(a) statement is not the proper form for making argumentative or conclusory denials. Malec v. Sanford, 191 F.R.D. 581, 584 (N.D.Ill.2000). To the extent that a party's responses do not comply with L.R. 56.1(a), they may not be considered by the court. Bradley v. Work, 151 F.3d 704, 707 (7th Cir.1998) (Evidentiary materials containing inadmissible hearsay, lay opinions, speculation and conclusions submitted in briefing a summary judgment should be stricken). A response to the moving party's 56.1 statement is not a proper means of presenting additional facts. Malec, 191 F.R.D. at 584. Any additional facts identified by the movant must be material to the outcome of the issues identified in the summary judgment motion. Id. at 583-84.

4. The Village submitted a Rule 56.1(a) factual statement, each of which is comprised of short, concise and discrete assertion of fact. However, Valentino does not simply admit or deny the allegations but rather sees fit to make argumentative and/or

conclusory denials. Additionally, at several points, Valentino attempts to present additional facts. Finally, Valentino supports her denials with inadmissible evidence.

5. In Paragraph 3 of its statement of additional facts, the Village alleges the following:

> #3. As building inspector, his duties included making inspections when necessary (See page 34 of Bramanti's deposition).
>
> Response: Admitted. Bramanti further states that his job duties as part-time building inspector for the Village of South Chicago Heights included more than just making inspection [sic] when necessary. His job duties and the functions he performed in general [sic] but was [sic] not limited to responding to all correspondence and questions concerning the building department; making inspections when necessary, referring to new constructions or rentals or remodeling, code enforcement (Bramanti dep at 34, Defendant's Exhibit B).

Although Paragraph 3 alleges a single, discrete fact, Bramanti has elected to use his response as a means of introducing additional irrelevant facts. As such, Count III violates L.R. 56.1 and must be stricken.

6. He likewise attempts to present additional facts in the following paragraphs: 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 35, 36, 37, 38, 39, 40, 41, 42, 43, 45, 46, 47, 48, 50, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87.

7. In addition to using his response as a forum for raising additional facts, Bramanti has issued a series of argumentative denials which, in many instances, have nothing to the individual defendant's assertion of fact. In paragraph 4, Defendant alleges that "Bramanti does not believe that any of the current elected officials in the Village of South Chicago Heights are being paid for work they did not perform" (See page 40 of

Bramanti's deposition testimony attached hereto as Exhibit A). In response, Bramanti states as follows:

> Defendant moves to strike paragraph 4 because it allegedly misstates and mischaracterizes his testimony but without waiving objection, states that based on the records there were questions about the payroll records for certain elected officials, what appeared as being paid 2 separate checks for the same time period. In addition, Bramanti testified that certain of the records were missing and not been produced by defendants.

At his deposition, Mr. Bramanti admitted that he did not believe Mr. Owen was being paid for work he did not perform. Rather than admit the truthfulness of his own testimony, Bramanti states that he has "questions about the payroll records for certain elected officials". His "questions" are not evidence. His complaints about missing records are irrelevant, especially since his attorney did not raise this issue of "missing records" while discovery was open. It should be noted that although Mr. Bramanti gave his deposition on March 9, 2005, discovery remained open until August of 2005. Accordingly, Bramanti can hardly claim that he was denied the opportunity to locate or identify "records that were missing".

8. In paragraph 8, Bramanti is asked to admit that when he left the Village he had no information or evidence which indicated that Village employees engaged in ghost payrolling (See page 49 of Bramanti's deposition testimony, Exhibit A). Plaintiff moved to strike that paragraph claiming that it does not concern a contested issue of material fact. He then submitted a six-paragraph argumentative response which raises matters not even alluded to in paragraph 8, including, but not limited to, his belief that "there was ghost payrolling going on". Bramanti's subjective belief is not evidence. Bramanti "further states that Mr. Bramanti resigned his position because he had concerns about Mayor David Owen hiring his own family members for positions that

were unnecessary or at a higher salary rate than budgeted for and as a result of the mayor's family members not working for the money they were being paid and then cites to his deposition testimony at pages 77 and 78. Paragraph 8 does not concern Mr. Bramanti's subjective beliefs or suspicions. It deals with the issue of whether, at the time he quit his job, he possessed information or evidence which suggested that Village employees were engaging in ghost payrolling. Instead of admitting the truthfulness of his own testimony, Bramanti has seen fit to filibuster and raise matters that are wholly irrelevant to what is contained in paragraph 8. Likewise, in paragraph 11, Bramanti is asked to admit that keeping family members on the public payroll does not violate state or federal law. In response, Plaintiff moved to strike claiming that the assertion did not address a contested issue of material fact and then goes on to argue that "the issue is not keeping family members on the payroll, but paying family members for the time they have not worked". . . Bramanti goes on to argue that the issue is "Defendant's misuse of public funds and retaliating against people who attempted to disclose such practice". He then provides an unsolicited opinion as to what constitutes "ghost payrolling".

9. In paragraphs 27 and 28, Bramanti was asked again to admit the truthfulness of his deposition testimony. In paragraph 27 he was asked to admit that he was unable to identify any specific instances in which April Faoro engaged in illegal or unlawful conduct. While he admits the accuracy of his own testimony, he states that "Bramanti and Valentino testified that the payroll records and sign-in sheets would reflect whether April Faoro was improperly paid for the time that she did not work and that the defendants did not produce those records". What Plaintiff neglects to mention is

that as of the date of Mr. Bramanti's deposition, his counsel had not issued any written discovery. Discovery closed some six months later and yet Plaintiff never asked this court to compel Defendants to produce additional records which would show "unlawful conduct" allegedly engaged in by Ms. Faoro.

10. Likewise, in paragraph 28, Bramanti was asked to admit the accuracy of testimony found at page 117 of his deposition testimony. This particular response, which violates both the letter and spirit of Rule 56.1, comprises several argumentative statements, most of which are unsupported by the factual record. The testimony identified by Mr. Bramanti is in many instances speculative, i.e. "Eric Faoro was a full-time teacher and that it seemed strange that he would be able to work a full-time job as a teacher and put in a 40-hour work at the Village as well". Bramanti then goes on to discuss the purpose of his "FOIA request" as a part of an effort to determine "what Eric Faoro and others were actually being paid to confirm the suspicions that there was a possibility that there might be ghost payrolling". Bramanti apparently believes a response to a factual statement is the proper place to offer ill-founded speculation. While Bramanti is entitled to his suspicions, he is not entitled to burden the record with them.

11. In paragraph 31, Bramanti again is asked to acknowledge the truthfulness of testimony he gave during his deposition. At pages 125 and 126 of his deposition, Bramanti testified that he had no evidence which indicated that David Owen directed Robert Carl to write a letter concerning Bramanti's failure to pay for water service at 175 East 34th Street. Paragraph 31 comprises one sentence and yet Bramanti has submitted a three-paragraph response that is evasive and argumentative. Instead of

responding with facts, Bramanti offers paranoid ravings to the effect that "Dave Owen has been with the Village for over 30 years. Nothing happens here without him knowing about it". He then identifies testimony given by Paul Peterson concerning problems with water billing. The only problem is that paragraph 31 concerns David Owen, not Paul Peterson.

12. In paragraph 36, Bramanti is asked to admit his testimony to the effect that the Village has not denied him any municipal services. Bramanti responds to this one-sentence assertion with yet another four-paragraph response that is filled with irrelevant, argumentative statements. While he admits "only that the Village did not deny him municipal services", he claims that the Village and Defendants retaliated against him in other ways. Again, Bramanti is using paragraph 36 as a means of raising additional matters having no connection to the paragraph in question.

13. A number of Plaintiff's responses are based on guess and speculation. A prime example of Bramanti's apparent inability to support his claims with admissible evidence can be found in his response to paragraph 50:

> #50. Bramanti has no information or evidence which indicates that Exhibit C (correspondence in which David Owen stated that William Bramanti wanted him to "ghost payroll him" was written by Village personnel working on Village time (See pages 191-193 of Bramanti's deposition testimony).
>
> Response: Denied. Plaintiff states that it was the standard practice of David Owen to use Village resources and services to send out this and similar campaign literature and to work on his campaign, and employees were expected to purchase fundraiser tickets to support Mayor Owen's campaign and were also given a certain number of tickets to sell which they often did while working on Village time (Ellis dep at 73-75, Exhibit 3).

Oddly enough, his response is not support by any citation to the record. The testimony Bramanti cites to is not his own but rather George Ellis' testimony. Mr.

    Ellis has no personal knowledge concerning the letter in question and thus his testimony to the effect that he sold tickets on Village time is irrelevant and non-responsive. Moreoever, paragraph 50 does not concern George Ellis' alleged knowledge.

14. Likewise, in paragraph 54, Bramanti was asked to admit that he had no information which indicated Village funds or resources were used to create the newsletter propounded by David Owen. Bramanti denied the assertion offered a self-serving screed to the effect that "it was the standard practice of Defendant Owen to use Village resources and services". . . He then changes the subject entirely by bringing up "Exhibit D" when the issue in paragraph 54 is not Exhibit D but rather Exhibit C. Accordingly, Bramanti's reference to "Exhibit D" is irrelevant and improper and must be stricken. Bramanti does not claim that Exhibit D was libelous or constituted retaliation.

15. In paragraph 66, Bramanti is directed to admit that he does not know whether Paul Peterson was involved in creating Exhibits C or D. He moved to strike paragraph 56 because it is "irrelevant to the plaintiff's claims against Defendants Owen and the Village of South Chicago Heights. Bramanti conveniently ignores the fact that he has also sued Paul Peterson. If it is Bramanti's claim that he does not have a claim against Paul Peterson under Counts III or IV, then those counts should be dismissed as to Defendant Peterson immediately. Bramanti, apparently relying on innuendo and nothing else, states that Defendant Owen testified as to Defendant's Exhibit C that "we put in the letter". He further argues that Defendant Owen testified that he sent out this letter in his capacity as mayor and was approved by Robert Bush, the town

attorney. The issue in paragraph 56 is whether Paul Peterson, not "we", was involved in creating Exhibits C or D.

16. Bramanti's reliance on speculation and conjecture pervades the entirety of his response. Accordingly, Defendant moves that the following paragraphs be stricken and dismissed based on the fact that they are not support by admissible evidence: 4, 5, 6, 7, 13, 15, (Bramanti attributes tax increase to misuse of public funds by David Owen based on past history and complaints he received from others"), 16, 17, 18, 19, 21, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 35, 38, 40, 42, 43, 45, 46, 47, 48, 50, 52, 53, 54, 55, 56, 57, 60, 61, 63, 64, 65, 66, 67, 68, 70, 71, 73, 74, 76, 77, 80, 82, 83, 84, 85, 86, 87.

17. Finally, Bramanti's responses in many instances consist of hearsay statements. In paragraph 70, Bramanti refers to a conversation he allegedly had with Joseph Christofanelli wherein he "told Bramanti that Paul Peterson had contacted him and the mayor about getting Bill Bramanti to stop coming in for the FOIA's". Accordingly, to the extent that they consist of hearsay, Plaintiff's responses to paragraphs 70 and 71 must be stricken.

WHEREFORE, the defendants, VILLAGE OF SOUTH CHICAGO HEIGHTS, prays for entry of an order striking the following paragraphs of William Bramanti's response: 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 35, 36, 37, 38, 39, 40, 41, 42, 43, 45, 46, 47, 48, 50, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87.

Respectfully submitted,
DOWD & DOWD, LTD.

By: /s/ Patrick J. Ruberry
Attorneys for defendant,
VILLAGE OF SOUTH CHICAGO HEIGHTS

## **CERTIFICATE OF SERVICE**

I, an attorney, state that Defendant Village of South Chicago Heights' motion to strike Plaintiff Bramanti's response to its Rule 56.1 statement was served electronically to all law firms of record via ECF on May 5, 2006.

By: /s/ Patrick J. Ruberry _____
     Attorney for Defendants

Patrick J. Ruberry
Dowd & Dowd, Ltd.
617 W. Fulton Street
Chicago, IL 60661
Tx: 312/704-4400
Fx: 312/704-4500